# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMES EDWARD SCOTT,

      Plaintiff

v.

NAPHCARE, et al.,

      Defendants

Case No.: 3:19-cv-00347-ART-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 87

This Report and Recommendation is made to the Honorable Anne Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Joshua Costello's motion for summary judgment. (ECF Nos. 87, 87-1 to 87-18.) Plaintiff filed a response (ECF No. 101), and Costello filed a reply (ECF No. 109).

After a thorough review, it is recommended that Costello's motion be granted because Plaintiff failed to exhaust available administrative remedies.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983; however, the events giving rise to this action took place while Plaintiff was a pretrial detainee at the Clark County Detention Center (CCDC). (Compl., ECF No. 4.)

The court screened Plaintiff's complaint, and allowed him to proceed in Count I with a claim under the Fourteenth Amendment for inadequate medical care as a pretrial detainee against Dr. Feely, Dr. Williamson, Nurse Karen, and Doe medical staff.

The court also allowed Plaintiff to proceed with a retaliation claim in Count 2 against defendant Costello and Doe officers based on allegations that Plaintiff asked for a grievance and Costello responded that Plaintiff should be placed in the "hole" and refused to give Plaintiff a grievance. Plaintiff was also allowed to proceed with a due process claim in Count 2 against Costello and the Doe officers based on allegations that they attempted to punish Plaintiff without a due process hearing by placing him in the "hole" for 15 hours.

In Count 3, Plaintiff was allowed to proceed with an excessive force claim as well as a claim for denial of access to the grievance process against Doe CERT Officers (when Plaintiff learns their identities).

In Count 5, Plaintiff was allowed to proceed with a retaliation claim against defendant Franklin based on allegations that after he asked for a grievance to file against Franklin, Franklin refused to allow Plaintiff to get his medication. (ECF No. 3.)

Nurse Karen, the Doe medical staff members, the Doe officers and Doe CERT officers have been dismissed without prejudice for lack of timely service. (ECF Nos. 48, 53.)

Costello moves for summary judgment, arguing: (1) Plaintiff did not exhaust his administrative remedies before filing his lawsuit against Costello; and (2) Costello did not retaliate against Plaintiff nor deprive him of due process.[1]

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

---

[1] Dr. Williamson and Dr. Feely (ECF No. 85) and Franklin (ECF No. 88) have also filed motions for summary judgment, which are each addressed in a separate report and recommendation.

1  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

2  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

3  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

4  of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

5  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

6  other hand, where reasonable minds could differ on the material facts at issue, summary

7  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

8      "The purpose of summary judgment is to avoid unnecessary trials when there is no

9  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

10  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

11  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

12  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

13  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

14  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

15  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

16  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

17  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

18  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

19  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

20  *Anderson*, 477 U.S. at 249.

21      In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

22  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

23  come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

**A. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

administrative remedies irrespective of the forms of relief sought and offered through

administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant

must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v.

Bock*, 549 U.S. 199, 204, 216 (2007). "If undisputed evidence viewed in the light most favorable

to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under

Rule 56. If material facts are disputed, summary judgment should be denied, and the district

judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168,

1170-71 (citations omitted).

Once a defendant shows the plaintiff did not exhaust available administrative remedies,

the burden then shifts to the plaintiff  "to come forward with evidence showing that there is

something in his particular case that made the existing and generally available administrative

remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d

767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate

plaintiff did not meet his burden when he failed to identify any actions prison staff took that

impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to

comply with the administrative remedies process). The ultimate burden of proof, however,

remains with the defendant. *Id*.

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm

grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89

(2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so

1 *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original)

2 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a)

3 requires an inmate not only to pursue every available step of the prison grievance process but

4 also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654,

5 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and

6 not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199,

7 218 (2007).

8       To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross*

9 *v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but

10 only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action

11 complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

12 **B. Analysis**

13       Costello provides evidence regarding CCDC's grievance procedures. An inmate must

14 first try to informally resolve his complaint, and if unsuccessful, he can file a formal grievance.

15 The grievance starts with the housing unit officer, and if it is not resolved at the officer level, it is

16 investigated/reviewed by the sergeant and responsible platoon lieutenant. If the grievance is not

17 resolved by the officer or sergeant, it will be forwarded through the chain of command until the

18 grievance is resolved. The chain of command includes the sergeant, lieutenant, captain and the

19 deputy chief. (CCDC grievance policy at ECF No. 87-3; Inmate Handbook at ECF No. 87-7 at

20 30; Goudie Decl., ECF No. 87-18 at 4-5 ¶ 12.)

21       According to Las Vegas Metropolitan Police Department's Lieutenant Ryan Goudie, in

22 2018, pretrial inmates went through a booking process at CCDC prior to detention, and a film

23 played routinely on a television screen viewable by all in the booking area that described the

1  internal procedures such as how to file a grievance and where to find information about the

2  inmate grievance process. (Goudie Decl., ECF No. 87-18 at 3-4 ¶ 7.) In addition, all inmates had

3  access to the inmate handbook which detailed the grievance process.  The handbook could be

4  requested from the housing unit officer or reviewed in the legal library kiosk in each housing

5  unit. (*Id*. at 3 ¶ 9.) Furthermore, all housing units had bulletin boards in the common areas that

6  displayed descriptions of the grievance process for inmates as well as appeal procedures. (*Id*. ¶

7  8.)

8       Costello provides evidence that Plaintiff filed various grievances while at CCDC, but

9  none of them address his allegations proceeding against Costello in this lawsuit. (ECF No. 87-5.)

10       Costello has met his burden of showing Plaintiff did not exhaust an available

11  administrative remedy. The burden now shifts to Plaintiff to show there is something in his case

12  that made the administrative remedy effectively unavailable to him.

13       In his response, Plaintiff argues that he was kept ignorant of the grievance procedures

14  because he never saw a video in the booking area.  He also alleges he was not advised where to

15  find information regarding rules or procedures or the inmate handbook. Plaintiff provides

16  declarations from other individuals who have been detained at CCDC that state there was no

17  intake video or handbook provided. (ECF No 101 at 37, 39, 40.)

18       In *Ross v. Blake*, the Supreme Court noted three instances where administrative

19  procedures were unavailable: (1) "when (despite what regulations or guidance materials may

20  promise) it operates as a simple dead end-with officers unable or consistently unwilling to

21  provide any relief to aggrieved inmates"; (i.e., handbook directs inmates to submit grievances to

22  particular administrative office, but in practice, it disclaims the capacity to consider those

23  petitions); (2) "an administrative scheme might be so opaque that it becomes, practically

speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Such as "[w]hen rules are 'so confusing that ... no reasonable prisoner can use them,' then 'they're no longer available.'"; (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 136 S.Ct. 1850, 1859-1860 (2016).The Ninth Circuit has characterized this as a "non-exhaustive list." *Andres v. Marshall*, 867, F.3d 1076, 1078 (9th Cir. 2017), *as amended* August 7, 2017.

Plaintiff does not dispute, or even address, Costello's evidence that aside from the intake video and inmate handbook, the grievance procedures were posted on bulletin boards in the housing units at CCDC. Importantly, Plaintiff acknowledges that he knew there was a grievance process, and one could fill out a grievance form and get a response. (ECF No. 101 at 30.) Plaintiff's deposition testimony acknowledges that he was able to request a grievance form to fill out about Costello the day after the alleged retaliation occurred. (ECF No. 101 at 53:16-18, "I wasn't able to get a grievance until after I was found guilty the following day.")

Plaintiff did file various grievances while at CCDC, but he did not file a grievance about Costello's alleged conduct. Plaintiff does not assert that he filed a grievance about Costello and received an unsatisfactory response, and that when he sought information about how to proceed, officers would not provide him any information. Nor does Plaintiff assert that he ever asked about the details of the grievance policy, including how to appeal an unsatisfactory response, and was denied that information.

"Ignorance of the grievance process is generally not sufficient to show that remedies were not available." *Miller v. Najera,* 1:12-cv-01288-LJO, 2017 WL 6538998, at *6 (E.D. Cal. Dec. 21, 2017); *see also Millare v. Murphy,* No. 2:20-cv-00451-WBS-JDP (PC), 2021 WL

4355455, at *4 (E.D. Cal. Sept. 24, 2021), *report and recommendation adopted in* 2021 WL 5015686 (E.D. Cal. Oct. 28, 2021) ("Plaintiff's lack of knowledge is insufficient to excuse him from exhausting administrative remedies."); *Eckard v. Symons,* No. 19-276-RSL, 2019 WL 4577248, at *3 (W.D. Wash. Aug. 5, 2019), *report and recommendation adopted* in 2019 WL 4572139 (W.D. Wash. Sept. 20, 2019), *affirmed by* 2022 WL 501121 (9th Cir. Feb. 18, 2022) (plaintiff's assertion that administrative remedies were not available because he was not given an orientation, did not get a copy of the grievance manual and did not have access to the law library was insufficient to demonstrate that administrative remedies were unavailable). Instead, "inmates are expected to make a reasonable, good faith effort to discover and exhaust the appropriate procedure." *Miller,* 2017 WL 6538998, at *6 (citation omitted). There is no evidence this occurred here.

In sum, the court concludes that the grievance process was available to Plaintiff, but he did not file a grievance concerning Costello's alleged conduct. Therefore, Costello's motion for summary judgment should be granted on the basis that Plaintiff failed to exhaust his administrative remedies before filing suit against Costello.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Costello's motion for summary judgment (ECF No. 87).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 22, 2022

_____
Craig S. Denney
United States Magistrate Judge