UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES EDWARD SCOTT,<br><br>    Plaintiff<br><br>v.<br><br>NAPHCARE, et al.,<br><br>    Defendants | Case No.: 3:19-cv-00347-ART-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 88 |

This Report and Recommendation is made to the Honorable Anne Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Franklin's motion for summary judgment. (ECF Nos. 88, 88-1 to 88-20.) Plaintiff filed a response (ECF No. 102), and Franklin filed a reply (ECF No. 110). After a thorough review, it is recommended that Franklin's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983; however, the events giving rise to this action took place while Plaintiff was a pretrial detainee at the Clark County Detention Center (CCDC). (Compl., ECF No. 4.)

The court screened Plaintiff's complaint, and allowed him to proceed in Count I with a claim under the Fourteenth Amendment for inadequate medical care as a pretrial detainee against Dr. Feely, Dr. Williamson, Nurse Karen, and Doe medical staff. The court allowed Plaintiff to proceed with retaliation and due process claims in Count 2 against defendant Costello and Doe officers. In Count 3, Plaintiff was allowed to proceed with an excessive force claim as well as a

claim for denial of access to the grievance process against Doe CERT Officers (when Plaintiff learns their identities). Finally, in Count 5, Plaintiff was allowed to proceed with a retaliation claim against defendant Franklin based on allegations that after Plaintiff asked for a grievance to file against Franklin, Franklin refused to allow Plaintiff to get his medication. (ECF No. 3.)

Nurse Karen, the Doe medical staff members, the Doe officers and Doe CERT officers have been dismissed without prejudice for lack of timely service. (ECF Nos. 48, 53.)

Franklin moves for summary judgment arguing: (1) Plaintiff failed to exhaust his administrative remedies before filing suit; (2) there is no evidence that Franklin retaliated against Plaintiff; (3) Franklin is entitled to qualified immunity; and (4) if Franklin is allowed to proceed past summary judgment, he may only recover nominal damages because there is no evidence he suffered any physical injury as a result of the alleged retaliation.[1]

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

---

[1] Defendants Dr. Feely and Dr. Williamson (ECF No. 85) and Costello (ECF No. 87) have also filed motions for summary judgment, and the court has addressed each motion in a separate report and recommendation.

2

other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

**1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71 (citations omitted).

Once a defendant shows the plaintiff did not exhaust available administrative remedies, the burden then shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. *Id*.

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654,

657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

**2. Analysis**

Franklin provides evidence regarding CCDC's grievance procedures. Under CCDC's Standard Operating Procedure (SOP) 14.00, an inmate is first encouraged to informally resolve the issue, but if unsuccessful, the inmate may file a formal grievance. The formal grievance is given to the housing unit officer, who will attempt to resolve the grievance. If a grievance is not resolved, it is processed through the chain of command until the grievance is resolved, with the last in the chain of command being the deputy chief. (ECF No. 88-3; *see also* CCDC inmate handbook at ECF No. 88-7 at 30.) The inmate handbook states that appeal procedures are posted in each housing unit. (ECF No. 88-7 at 30.)

It is undisputed that Plaintiff filed three grievances regarding Franklin on May 24, 2018. (ECF No. 88-5 at 8-10.)

Franklin first argues that none of these grievances raised the issue of Franklin's alleged retaliation against Plaintiff that is proceeding in this action.

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is being sought." *Sapp*, 623 F.3d at 824 (citation and quotation marks omitted). The grievance "need not include legal terminology or legal theories" as its "primary purpose … is to

alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

Plaintiff filed a grievance on May 24, 2018, asserting that at approximately 14:00 hours (2:00 p.m.), Franklin ordered him to remove a Christian cross that was etched into the wall of his cell. Plaintiff informed Franklin he had just moved to the unit, and the cross was there long before he arrived. He also told Franklin that due to his religion he could not participate in the removal of the cross. Franklin gave Plaintiff and his cellmate a 24-hour lockdown and threatened to send them to the segregation unit if the cross was not removed. Plaintiff asked for a grievance and was denied by Franklin. Plaintiff eventually obtained a grievance from Officer Hitt, who worked the next shift. Sergeant Miller responded to the grievance the next day: "I spoke with you on 5/25/18 around 8am at your cell and this issue has been resolved. Report written." (ECF No. 88-5 at 10.)

Plaintiff filed a second grievance on May 24, 2018, asserting that at approximately 14:30 hours (2:30 p.m.), Plaintiff asked Franklin for a grievance because he felt that Franklin had punished him for not removing a crucifix that had been etched into a wall of Plaintiff's cell before Plaintiff arrived in the cell. Plaintiff asserted that Franklin refused to give Plaintiff a grievance after repeatedly asking for it. Plaintiff claimed that Franklin did this as a form of punishment and locked him in his cell. Sergeant Miller gave the same response: "I spoke with you on 5/25/18 around 8 am at your cell and this issue has been resolved. Report written." (ECF No. 88-5 at 8.)

Plaintiff filed a third grievance on May 24, 2018, asserting that also at approximately 14:30 hours, medical pass was being conducted for his unit, and Franklin "popped" every door on the top tier that had to receive medication during that time. Plaintiff claimed he was one of the

7

inmates that should have received medication at that time, but Franklin did not "pop" his door open. Plaintiff pressed his emergency light, and Franklin shut off Plaintiff's medical light and tried to ignore Plaintiff. Plaintiff pressed his medical emergency light again and yelled out the door to get Franklin's attention. He told Franklin that he takes high risk chronic medication and has stage 4 chronic kidney failure, and he had two medical request slips to turn in. Franklin denied Plaintiff access to his medication and medical care. Franklin came to Plaintiff's door 10 to 20 minutes after medical pass and told him the reason he denied Plaintiff access to the nurse was because Plaintiff had not removed the cross from the wall as Franklin had asked. Sergeant Miller responded to the grievance the next day with the same response: "I spoke with you on 5/25/18 around 8 am at your cell and this issue has been resolved. Report written." (ECF No. 88-5 at 9.)

The court finds that Plaintiff's grievances sufficiently put CCDC on notice of the problem to facilitate resolution. While Plaintiff did not use the word retaliation, he was not required to. Plaintiff sufficiently asserted that he asked Franklin for a grievance various times, and was refused, and during the same timeframe, Franklin refused to allow him to go to pill call.

Franklin next argues that even if the grievances are construed as raising the issue proceeding in the complaint, Plaintiff did not proceed through the chain of command to appeal the grievance.

CCDC's grievance policy states that the inmate must proceed through the chain of command until the grievance is *resolved*. Each of the three grievances Plaintiff filed against Franklin were deemed *resolved* by Sergeant Miller the following day. To the extent that the inmate handbook provides that an inmate may proceed through the chain of command if he is not *satisfied* with the response, the grievance policy and the inmate handbook are inconsistent. This

presents a scenario that the Supreme Court deemed sufficient to find administrative remedies unavailable: "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prison can discern or navigate it." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

In sum, the court finds that to the extent CCDC's grievance policy required an inmate to proceed through the chain of command until the grievance is *resolved,* Plaintiff exhausted his administrative remedies. Insofar as the inmate handbook contains a contradictory provision—that an inmate must proceed through the chain of command as long as he is *unsatisfied* with the response—the rules were so confusing that no reasonable prisoner could navigate them, and administrative remedies were unavailable to Plaintiff.

The court will now address the merits of Plaintiff's retaliation claim.

**B. Retaliation**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)). "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citations omitted).

"[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted). The plaintiff "need only put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]" *Id*. (citation and quotation marks omitted). The evidence that establishes a link between the exercise of constitutional rights and the alleged retaliatory action may be either direct or circumstantial. *Pratt,* 65 F.3d at 806-07.

Franklin first argues there is no evidence that Franklin refused to allow Plaintiff to go to pill call because he asked for a grievance. Franklin points to one of Plaintiff's grievances, where Plaintiff claimed that Franklin came back to his cell and said the reason Plaintiff was not allowed to go to pill call was because he had refused to clean the cross off of the cell wall earlier. Therefore, Franklin argues that the motivating factor for the adverse conduct was Plaintiff's refusal to clean the cross, and not his request for a grievance.

Circumstantial evidence of a link between the protected activity and the adverse conduct may include proximity in time between the protected activity and the alleged retaliation. *See Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (suspect timing created a dispute of fact regarding the motive for the adverse conduct); *Pratt,* 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Here, Plaintiff asserted in his grievances that he asked for and was refused a grievance and was not let out for pill call all around the same 2:30 p.m. timeframe. Moreover, Plaintiff claims that he asked Franklin for a grievance several times during this short time frame.

Franklin also argues that Plaintiff was not let out for pill call because the nurse told Franklin that Plaintiff was not on the list to receive medication during the 2:30 p.m. time slot.

10

1  The incident report states that after Plaintiff activated his light, "Officer Franklin checked with
2  the nurse and Scott did not take meds at the time and was on lockdown so Franklin did not let
3  him out." (ECF No. 88-10 at 2.) Franklin claims that Plaintiff was prescribed sodium bicarbonate
4  three times a day, and by 2:30 p.m., Plaintiff had already received his medications twice, and
5  Plaintiff received the next dose that evening and not in the afternoon. Franklin argues that this
6  demonstrates that the adverse conduct was not related to Plaintiff's request for a grievance, and
7  in addition, it establishes a legitimate penological reason for continuing Plaintiff's lockdown.
8        Plaintiff disputes that he was not on the pill call list, asserting in his declaration that he
9  took medication during all three pill calls.
10       It is undisputed that Plaintiff was prescribed sodium bicarbonate 650 mg, which was to
11  be taken three times a day. (ECF No. 88-15 at 2.) The medication administration records reflect
12  Plaintiff had refused the administration of sodium bicarbonate at 4:22 a.m. on May 23, 2018, and
13  he refused it again at 5:27 a.m. that day. There is another notation at 3:56 p.m. on
14  May 23, 2018, that sodium bicarbonate was not administered because Plaintiff was out of the
15  facility in court. Sodium bicarbonate was administered at 12:22 a.m. on May 24, 2018, and then
16  at 10:26 a.m. on May 24, 2018. There is a notation for sodium bicarbonate at 5:05 p.m. on May
17  24, 2018, but instead of saying the medication was "administered," the record says "other."
18  Sodium bicarbonate was administered at 9:35 p.m. on May 24, 2018. It was administered the
19  following day, May 25, 2018, at 4:31 p.m. and 8:32 p.m. (ECF No. 88-18 at 2-3.)
20       It is unclear whether the 12:22 a.m. administration on May 24, 2018, was the last
21  administration for that previous 24 hours, or the first administration for the next 24 hours. The
22  limited medication administration records provided do not shed much light on how the pills were
23  typically administered. Franklin argues that Plaintiff presents no evidence that he was on pill call

at this time, but Plaintiff states in his declaration that he took pills during all three pill administration periods. Plaintiff's own declaration is competent evidence to create a dispute of fact as to whether he was on the pill call list, and whether there was a legitimate penological purpose for not allowing Plaintiff out of his cell for pill call.

Finally, Franklin contends that sodium bicarbonate was not a "high risk" medication, so even if Plaintiff had been on the pill call list at 2:30 p.m., it was reasonable to keep him in lockdown to preserve order and prevent Plaintiff from becoming disruptive again. Franklin's argument refers to a medical request Plaintiff sent on May 24, 2018, where he complained that Franklin and a nurse denied Plaintiff access to his "high risk chronic medication and access to chronic medical care in regards to my stage 4 chronic kidney failure." The response to the request states: "Sodium bicarbonate is not considered a high risk medication. All other medications are documented as given." (ECF No. 88-14 at 2.) It is unclear what the responder meant when she said the medication was not "high risk." In any event, Plaintiff states that he took sodium bicarbonate for chest pain and acid reflux, and that he suffered from these conditions when he was not given his medication. This creates an additional dispute as to whether there was a legitimate reason for keeping Plaintiff in his cell during pill call.

In sum, Plaintiff has presented a genuine dispute of material fact as to whether Franklin retaliated against him because he had requested to file a grievance against Franklin, and whether there was a legitimate penological purpose for not allowing Plaintiff to go to the 2:30 p.m. pill call that day.

**C. Qualified Immunity**

In evaluating whether to grant qualified immunity, the court considers "whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the

time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citations omitted). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages." *Id*. at 968 (citation omitted).

Taking the facts in the light most favorable to Plaintiff, a fact finder could conclude that Franklin retaliated against Plaintiff by denying him access to pill call because he had asked for grievances to file against Franklin. In addition, it was clearly established that there was a constitutional right to pursue grievances or civil litigation. *Entler v. Gregoire,* 872 F.3d 1031, 1041-42 (9th Cir. 2017). Therefore, Franklin's motion should be denied insofar as he asserts he is entitled to qualified immunity.

**D. Damages**

Finally, Franklin argues that Plaintiff be limited to recovering nominal damages because the evidence demonstrates he did not suffer any physical injury as a result of the alleged retaliation.

"A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations." *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988); *see also Smith*, 461 U.S. at 52 ("Compensatory damages … are mandatory.") Compensatory damages include actual losses, mental anguish and humiliation, impairment of reputation and out-of-pocket losses. *See Borunda*, 885 F.2d at 1389. Although mental and emotional distress damages are available as compensatory damages under §1983, under the Prison Litigation Reform Act, "[n]o federal civil action may be brought by a prisoner … for mental or emotional injury suffered while in custody without a prior showing of *physical injury*." 42 U.S.C. § 1997e(e) (emphasis added).

"Nominal damages must be awarded in cases in which the plaintiff is not entitled to compensatory damages, such as cases in which no actual injury is incurred or can be proven." *Hazel v. Crofoot*, 727 F.3d 983, 991-92 n. 6 (9th Cir. 2013); Ninth Circuit Model Civil Jury Instruction 5.6.

Plaintiff presents evidence in the form of his own declaration that he suffered chest pain and acid reflux as a result of Franklin's denial of his access to pill call. Franklin argues that Plaintiff has not presented medical evidence to substantiate this claim, but his declaration is sufficient to create an issue of fact that should be resolved at trial.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Franklin's motion for summary judgment (ECF No. 88).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 22, 2022

_____
Craig S. Denney
United States Magistrate Judge