UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES EDWARD SCOTT, | Case No. 3:19-cv-00347-ART-CSD |
| Plaintiff, | ORDER |
| v. | |
| NAPHCARE, CLARK COUNTY DETENTION CENTER, DOCTOR KAREN, DOCTOR FEELEY, DOCTOR WILLIAMSON, | |
| Defendants. | |

Before the Court are a Motion for Partial Reconsideration (ECF No. 116) and Motion to Strike (ECF No. 120) brought by Defendant Larry Williamson M.D. ("Dr. Williamson"), and a Motion to Respond to Defendants Reply to Plaintiff's Opposition to ECF No. 115 (ECF No. 119) filed by Plaintiff James Edward Scott ("Scott").

Dr. Williamson brings his Motion for Partial Reconsideration (ECF No. 116) on the grounds that the Court's Order Regarding Report and Recommendations ECF Nos. 112, 113, and 114 (ECF No. 115) did not address one of Dr. Williamson's arguments for summary judgment: that Scott failed to exhaust his administrative remedies before filing suit as required by the Prisoner Litigation Reform Act (PLRA). (ECF No. 116 at 1). For the reasons discussed below, this Court denies Dr. Williamson's Motion for Reconsideration and Motion to Strike, and grants Scott's Motion to Respond, which the Court construes as a Motion for Leave to File a Surreply.

## I.  BACKGROUND

The Court incorporates by reference its discussion of the factual background in this case in ECF No. 115 and Judge Denney's factual background in ECF No. 112.

## II. LEGAL STANDARD

### A. Motion for Reconsideration

A motion for reconsideration may be brought according to either Federal Rule of Civil Procedure 59(e) or 60(b). *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989) (citing *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985)).

"A district court may grant a Rule 59(e) motion if it 'is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (emphasis in original) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc). "[A] Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Id.* (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment. Fed.R.Civ.P 59(e).

"Rule 60(b) 'allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *Wood*, 759 F.3d at 1119 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)). "Under Rule 60(b)(1), a party may seek relief based on 'mistake, inadvertence, surprise, or excusable neglect.'" *Kemp v. United States*, — U.S. —, 142 S. Ct. 1856, 1861 (2022). Rule 60(b)(1) "covers all mistakes of law made by a judge. . . ." *Id.* Under Rule 60(b)(6) a court may relieve a party or its legal representative from an order for "any ... reason that justifies relief" other than the more specific reasons set forth in Rule 60(b)(1)-(5). Fed.R.Civ.P. (60)(b)(6). A movant seeking relief under Rule 60(b)(6) must show "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). Unlike a Rule 59(e) motion, a Rule 60(b)(1) motion may be brought within one year, and a Rule 60(b)(6) motion need only be brought in a "reasonable time." *Kemp*, 142 S. Ct. at 1861.

Here, Dr. Williamson brought his Motion for Partial Reconsideration (ECF No. 116) six days after the Court entered its Order (ECF No. 115). Therefore, Dr. Williamson's Motion was timely under either Rule 59(e) or 60(b)(1). As no extraordinary circumstances exist in this case, the Court construes Dr. Williamson's Motion as arising under Rule 60(b)(1) based on the Court's omission of a discussion regarding administrative exhaustion.

## B. Administrative Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). [A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[.]" *Id.* at 88. But, because the PLRA requires exhaustion of those administrative remedies "as are available," the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). In other words, an inmate must exhaust only those grievance procedures "that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

In a non-exhaustive list, the Supreme Court has explained three ways where a grievance procedure is unavailable: 1) when it operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Id.* In the third instance, a grievance procedure is unavailable when "the correctional facility's staff misled the inmate as to the existence or rules of the grievance process," misled the inmate "into thinking that … he had done all he needed to initiate the grievance process" or "play[s] hide-and-seek with administrative remedies." *Id.* at fn.3 (citations omitted). As is relevant here, "remedies are not considered 'available' if, for example, *prison officials do not provide the required forms to the prisoner* or if officials threaten retaliation for filing a grievance." *Draper v. Rosario*, 836 F.3d 1072, 1078 (9th Cir. 2016) (emphasis added).

Failure to exhaust administrative remedies is a non-jurisdictional affirmative defense that defendants must raise and prove. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014); *Jones v. Bock*, 549 U.S. 199, 212-17 (2007). A "defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy. … Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. … The ultimate burden of proof, however, remains with the defendants." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Albino*, 747 F.3d at 1166.

### III.        DISCUSSION

Dr. Williamson is correct that the Court did not discuss one of Dr. Williamson's grounds for summary judgment—administrative exhaustion—in its Order. (ECF No. 115). The Court does so here.

1

**A. Administrative Exhaustion**

2

Here, Dr. Williamson has proffered evidence that a NaphCare grievance policy

3 existed at all times relevant to this lawsuit and that the NaphCare grievance

4 policy included an appeals process that Scott did not utilize while he was

5 incarcerated at CCDC. (*See* ECF No. 85-2 at 1-2, 5).

6

Dr. Williamson has not, however, demonstrated that the NaphCare grievance

7 policy was available to Scott. Construing all evidence in Scott's favor, Scott has

8 proffered evidence that he was only aware of CCDC's grievance policy, not

9 NaphCare's policy. In addition, Scott has met his burden showing that the

10 NaphCare grievance process was effectively unavailable to him because prison

11 officials did not provide him with the proper forms, required him to sign an

12 acknowledgment of the NaphCare grievance policy he was allegedly never shown,

13 and effectively played "hide-and-seek with administrative remedies" regarding the

14 NaphCare grievance policy. *See Ross*, 578 U.S. at 643 fn.3; *Draper*, 836 F.3d at

15 1078. Therefore, given that Scott did put Dr. Williamson on notice of his concern

16 that Dr. Williamson's administration of lisinopril caused his kidney injury via the

17 CCDC grievance process, the Court concludes that Scott has met the

18 administrative exhaustion requirements under the PLRA.

19

At times, the briefing in this case conflates the two grievance policies

20 theoretically available to Scott while incarcerated at CCDC: the CCDC grievance

21 policy and the NaphCare grievance policy. As Dr. Williamson points out, "[t]he

22 administrative remedies pertaining to claims against Dr. Williamson are governed

23 by NaphCare's grievance policy . . . not the CCDC grievance policy." (ECF No. 118

24 at 2). As such, the operative question is whether Dr. Williamson has met his

25 burden of demonstrating that NaphCare's grievance process was generally

26 available, and, if so, whether Scott has shown that the generally available remedy

27 was effectively unavailable to him. *See Williams*, 775 F.3d at 1191; *Ross*, 578 U.S.

28 at 642.

Scott filed two grievances relating to his treatment by Dr. Williamson while incarcerated at CCDC. (*See* ECF No. 85-2 at 12-13). Dr. Williamson argues that the two grievances Scott filed against him were insufficient to exhaust Scott's administrative remedies because Scott did not appeal the responses as authorized by the NaphCare grievance policy. Scott emphatically argues that he was never told about the NaphCare grievance policy, including its appeal procedures. Scott alleges, "[a]ll that I knew was that there was *a* grievance form that I can fill out (which I did)." (ECF No. 92 at 8) (emphasis added) (*see also* ECF No. 119 at 3-4 (Scott was never aware of NaphCare grievance policy until after it was produced during this litigation). The sole grievance form Scott was aware of is presumably the "Las Vegas Metropolitan Police Department Inmate Request/Grievance" form discussed below, as Scott filed all the medical and non-medical grievances presently in the record before the Court using this form.

Dr. Williamson submits no evidence that Scott was aware of the NaphCare grievance policy specifically other than Scott's electronic signing of two forms: the "General Informed Consent form" and the "Medical Services form." (ECF No. 85-2 at 8-9). Scott alleges, however, that he was never shown the General Informed Consent or Medical Services forms. (ECF No. 117 at 5). Scott avers that he was "simply told to sign a small black electronic keypad confirming that [Scott] received an 'orientational' medical screening" and that he was unaware of the forms to which his signature would be applied. (*Id.* at 5-6). The General Informed Consent and Medical Services forms filed by Dr. Williamson show an electronic, not wet, signature. (ECF No. 97-1 at 4-5). Dr. Williamson has submitted no additional evidence that Scott was actually provided with the forms themselves, rather than the electronic signature pad alone. (*See* ECF Nos. 85 at 17-18; 97 at 2-4; 116 at 3-4). Construing all evidence in Scott's favor as the Court must at this stage of the proceedings, Scott's electronic signatures do not show his knowing acknowledgement of the forms' contents absent additional evidence

1    indicating that copies of the General Informed Consent and Medical Services

2    forms were given or shown to Scott prior to him providing his electronic signature.

3          Moreover, Dr. Williamson submits no evidence that the NaphCare

4    Grievance Form outlined in the NaphCare grievance policy was ever provided to

5    Scott for him to appeal the CCDC grievances Scott filed against Dr. Williamson.

6    Both of Scott's grievances against Dr. Williamson were filed on forms titled "Las

7    Vegas Metropolitan Police Department Inmate Request/Grievance." (*See* ECF No.

8    85-2 at 12-13). This is the same form Scott used to file grievances for a wide

9    variety of issues at CCDC, including the return of property, issues with Scott's

10    commissary account, and the issues Scott has litigated in this action against

11    Officer Franklin. (*See generally* ECF No. 87-5). Notably, the NaphCare grievance

12    policy in effect at CCDC at all times relevant to this litigation called for the use of

13    a "Health Care Complaint form" at the first level of NaphCare's grievance process,

14    a "Health Care Grievance form" at the second level of NaphCare's grievance

15    process, and a "Health Care Grievance Appeal form" at the third level of

16    NaphCare's grievance process. (ECF No. 85-2 at 5-6). Based on the Court's

17    inspection of the record, none of these forms are before the Court, nor is there

18    any evidence that they were physically available at CCDC during the relevant

19    period.

20          The availability of the NaphCare grievance process is further obfuscated by

21    language in the CCDC Inmate Handbook, which discusses a medical grievance

22    policy but omits any discussion of an appeals process. (ECF No. 87-7 at 27).

23    Instead, the "Medical Request/Grievance Forms" section reads, in full, "[I]f you

24    are not satisfied with any aspect your health care, you have the right to request

25    information or send a grievance to the contracted medical provider, [sic] health

26    services administrator, for an investigation and response to your complaint." (*Id.*)

27    By comparison, the NaphCare grievance policy includes a detailed three-level

28    appeals process, including procedural and temporal limitations on that process.

(ECF No. 85-2 at 5-6). Insofar as these policies are contradictory, the rules were so confusing that no reasonable prisoner could navigate them, and the administrative remedies were therefore unavailable to Scott.

Viewing the evidence in the light most favorable to Scott, Scott met his burden in showing that the NaphCare administrative remedy and its attendant appeals process was not available to him. "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Williams*, 775 F.3d at 1191 (quoting *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014)). Scott's grievances regarding the care provided by Dr. Williamson provided him and CCDC with opportunities to correct Dr. Williamson's alleged error by putting NaphCare on notice that Scott believed lisinopril had caused severe damage to his kidneys. Construing all facts in the light most favorable to Scott, CCDC and NaphCare both misled Scott into thinking that he had completed the grievance process by including a fraction of it in the CCDC Inmate Handbook, and "play[ed] hide and seek" with NaphCare administrative remedies by not providing the proper NaphCare grievance forms to Scott and omitting the relevant appeals information from the Inmate Handbook. *See Ross*, 578 U.S. at 643 fn.3.

For the reasons discussed above, the Court therefore denies Dr. Williamson's Motion for Reconsideration. (ECF No. 116).

**B. Motion for Surreply and Motion to Strike**

Scott filed a "Motion to Respond to Defendants' Reply to Plaintiff's Opposition to ECF No. 115." (ECF No. 119). In it, Scott requests the Court "grant [Scott] permission to submit a response" to Dr. Williamson's Reply. (ECF No. 118). In response, Dr. Williamson filed a Motion to Strike. (ECF No. 120). Given his *pro se* status, the Court construes Scott's Motion to Respond as a request for leave of court to file a surreply, and the memorandum of points and authorities therein as the contents of the surreply. Good cause appearing, the Court grants Scott's Motion to Respond (ECF No. 119) and accordingly denies Dr. Williamson's Motion

1  to Strike. (ECF No. 120).

2  **IV. CONCLUSION**

3  The Court notes that the parties made several arguments and cited to several

4  cases not discussed above. The Court has reviewed these arguments and cases

5  and determines that they do not warrant discussion as they do not affect the

6  outcome of the motion before the Court.

7  For the foregoing reasons, the Court hereby denies Dr. Williamson's Motion

8  for Reconsideration. (ECF No. 116).

9  It is further ordered that Scott's Motion to Respond is granted. (ECF No. 119).

10  It is further ordered that Dr. Williamson's Motion to Strike is denied. (ECF No.

11  120).

12

13  It is so ordered.

14

15  DATED THIS 13th day of June 2023.

16

17

18  _____

19  ANNE R. TRAUM
    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28